**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Myoshi Young,

Plaintiff,

v.

Primavera Foundation Incorporated,

Defendant.

No. CV-25-00264-TUC-RM

**ORDER**

Plaintiff Myoshi Young sues Defendant Primavera Foundation Incorporated, alleging race and sex discrimination in violation of Title VII and 42 U.S.C. § 1981, as well as wrongful termination in violation of A.R.S. § 23-1501A(c)(ii).[1] (Doc. 1.) Currently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 41), which is fully briefed (Docs. 47, 50).

**I. Legal Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that it believes demonstrate

[1] The Court assumes Plaintiff is referring to A.R.S. § 23-1501(A)(3)(c)(ii).

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 251; *see also Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

At summary judgment, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In evaluating a motion for summary judgment, the court must "draw all reasonable inferences from the evidence" in favor of the non-movant. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002). If "the evidence yields conflicting inferences, summary judgment is improper, and the action must proceed to trial." *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II. Background

There is no genuine dispute concerning the following facts.

Plaintiff worked full time as a Kitchen Team Member in Primavera's men's shelter from August 2023 to June 2024. (Doc. 42 at 1, 8 ¶¶ 1-2, 38-39; Doc. 42-10; Doc. 48 at 1 ¶¶ 1-2.)[2] Paul Guiffre was the Program Manager at the men's shelter, and Reyna Leon was the Director. (Doc. 42-2 at 3; Doc. 47-2 at 4, 6.) Leon was Guiffre's supervisor, and Guiffre supervised Plaintiff and other employees, including Raquel Aguayo and Jose Morel. (Doc. 47-2 at 5-6.)

Plaintiff has convictions for assault, terroristic threatening, endangering a child, fraudulent use of a credit card, and theft. (Doc. 42 at 2 ¶ 5; Doc. 42-1 at 4; Doc. 48 at 2 ¶ 5.) As a result, Plaintiff was unable to get a fingerprint clearance card during her employment at Primavera, which precluded her from working with participants at the

[2] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

men's shelter. (Doc. 42 at 4 ¶¶ 15-16; Doc. 42-1 at 9-10; Doc. 48 at 3 ¶¶ 15-16.) Primavera's standard practice is to pay for employees' fingerprint clearance card applications and navigate employees through the application process, but Primavera does not directly apply for employees' clearance cards or provide denial letters. (Doc. 42-3 at 4; Doc. 47-2 at 13; Doc. 49-1 at 6-7.) There is no dispute that Defendant provided Plaintiff with information about the fingerprint clearance card process and paid for her clearance card application, but Plaintiff alleges Defendant provided greater assistance to non-Black employees. (Doc. 42 at 4 ¶ 17; Doc. 42-1 at 6-8, 30; Doc. 42-4; Doc. 42-5; Doc. 42-6; Doc. 48 at 3 ¶ 17.)

Guiffre coordinated overtime shifts and, when there was a need for overtime, would contact Leon for authorization to approve the overtime. (Doc. 47-2 at 9-11; Doc. 49-1 at 3-5.) Guiffre had the authority to approve overtime if Leon was unavailable, but Aguayo did not have authority to approve overtime. (Doc. 47-2 at 11; Doc. 49-1 at 4.) Plaintiff received multiple admonishments from Guiffre about working unapproved overtime. (Doc. 42 at 4 ¶¶ 18-19; Doc. 42-1 at 10-13; Doc. 48 at 3 ¶¶ 18-19.) On one occasion, Aguayo told Plaintiff to work past the scheduled end of her shift, but Plaintiff was admonished by Leon and Guiffre for doing so. (Doc. 42-1 at 11-13.) Plaintiff received a Performance Memo in April 2024 about not following her established work schedule. (Doc. 42 at 4 ¶ 20; Doc. 42-1 at 13-14; Doc. 42-7; Doc. 48 at 3 ¶ 20.) Plaintiff alleges that another employee, Jose Morel, was permitted to clock in early and clock out late, while Plaintiff was disciplined for similar conduct. (Doc. 48 at 5 ¶ 34.)

Plaintiff reported bedbugs during her employment at Primavera. (Doc. 42 at 5 ¶¶ 23, 25; Doc. 42-8; Doc. 48 at 4 ¶¶ 23, 25.) There is no dispute that Primavera obtained pest control services, though Plaintiff disputes whether the issue was adequately resolved. (Doc. 42 at 5 ¶¶ 24, 26; Doc. 42-1 at 27-28; Doc. 42-2 at 7-8; Doc. 48 at 4 ¶¶ 24, 26.)

In June 2024, Plaintiff got a job that paid better than her job at Primavera. (Doc. 42-1 at 15-17.) On June 5, 2024, she sent the following email to Guiffre and Aguayo:

> Hello, Paul. I am reaching out to you in regards to my upcoming scheduled hours. I can only work one day a week

> after this Saturday due to my other work schedule. This job is starting me at $28.00 an hour with a $10.00 incentive during travel in company car. Sorry for any inconveniences but I have to do what is best for my career goals and my family finances. I have finally received my Associates in Arts in the mail last week and will be receiving my bachelors soon after passing the final over all course this coming summer semester. Thanks for everything from you both because you two and Molly are the only supervisors who made me feel like my values were appreciated.
>
> Best regards,
>
> Myoshi.

(Doc. 42-9.)

Mr. Guiffre responded:

> Myoshi,
>
> Thank you for your service to the Unhoused community and the work you accomplished while at Primavera Men's Shelter.
>
> I will need to follow up with Reyna and HR as to whether we can accommodate the 1 day a week. Stay tune[d] as to this issue. We will chat more about the notice and your future endeavors.
>
> Thank you,
>
> Paul

(*Id.*)

Plaintiff alleges that, even though her email did not constitute a resignation, Defendant removed her from the schedule after she sent the email. (Doc. 48 at 5 ¶ 36.) Guiffre testified that Primavera needed a full-time Kitchen Team Member, and therefore reducing Plaintiff's hours to one shift per week was not possible. (Doc. 47-2 at 15-17.) On June 8, 2024, Plaintiff signed a Termination Form that checked "Voluntary Resignation" as the reason for termination and stated: "Sent email resigning and forward[ed] to Director and HR. Stated last day work would be Saturday, June 8th." (Doc. 42-10.)

## III. Discussion

Defendant argues in its Motion for Summary Judgment that Plaintiff cannot

establish a prima facie claim under either Title VII or 42 U.S.C. § 1981 because there is no evidence that she experienced an adverse employment action. (Doc. 41 at 4-6.) Defendant further argues that it is entitled to summary judgment on Plaintiff's wrongful termination claim because Plaintiff cannot prove that she was terminated. (*Id.* at 6-7.) Finally, Defendant argues that Plaintiff cannot meet the standard for punitive damages. (*Id.* at 7-9.)

**A. Compliance with Local Rules**

As an initial matter, Plaintiff's summary judgment briefing fails to fully comply with Local Rule of Civil Procedure ("LRCiv") 56.1, which requires a party opposing a summary judgment motion to "file a statement, separate from that party's memorandum of law, setting forth" (1) whether each paragraph of the moving party's statement of facts is disputed; "and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party." LRCiv 56.1(b). "Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support." *Id.*

Here, Plaintiff submitted a Response to Defendant's Statement of Facts (Doc. 48), but the document does not include additional facts that Plaintiff contends preclude summary judgment. Instead, Plaintiff has incorporated factual allegations into her responsive memorandum of law, making evaluation of her arguments and evidence unnecessarily burdensome.

**B. Adverse Employment Action**

In Counts I through III, Plaintiff alleges disparate treatment in violation of Title VII and 42 U.S.C. § 1981. (Doc. 1.) Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. §2000e-2(a)(1). Section 1981(a) provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and

enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). The same legal principles apply to employment discrimination claims under Title VII and § 1981. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004).

Disparate treatment claims are evaluated under the three-part test articulated in *McDowell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff bears an initial burden of establishing a prima facie case of discrimination. *Id.* at 802. To state a prima facie disparate treatment claim, a plaintiff must show: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for [her] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

If the plaintiff establishes a prima facie case of disparate treatment, a presumption of unlawful discrimination arises, *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981), and the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action, *McDowell Douglas Corp.*, 411 U.S. at 802. The plaintiff may then satisfy her burden at the third step of the *McDonnell-Douglas* framework either directly by showing "that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation [for the adverse employment action] is unworthy of credence." *Burdine*, 450 U.S. at 256.

Plaintiff contends there are triable issues of fact with respect to her race discrimination claims because she was denied direct assistance with the fingerprint clearance card process, while Raquel Aguayo was provided such assistance and permitted to continue working despite a known criminal history and unresolved clearance issues.

(Doc. 47 at 8-9.) Plaintiff argues there are triable issues of fact with respect to her sex discrimination claim because she was disciplined for working overtime when a male coworker, Jose Morel, was allowed to clock in early and clock out late without discipline. (*Id.* at 9.) Finally, Plaintiff argues that a reasonable jury could find that Defendant's failure to accommodate her schedule change request constituted a termination of Plaintiff's employment. (*Id.* at 9-10.) The Court analyzes each argument in turn.

**1. Fingerprint Clearance Card Application**

Plaintiff has not shown that Primavera provided greater assistance to non-Black employees in the fingerprint clearance card process, nor has she shown that the assistance provided to her constitutes an adverse employment action. The undisputed evidence indicates that Primavera followed its standard practice of paying for the clearance card applications of both Plaintiff and Aguayo, and providing both employees with assistance in navigating the application process. Plaintiff testified that Primavera paid for her application; that Leon sent her a criminal history self-disclosure affidavit to fill out before she started at Primavera; that the self-disclosure form provided information on which charges would result in the denial of a card and what to do in the event of a denial; and that Guiffre and Leon continued to communicate with her about the clearance card process in November 2023 and April 2024. (Doc. 42-1 at 6-8, 30.) Evidence in the form of emails similarly reflects that Primavera provided Plaintiff with information about the clearance card application process but did not directly submit her application, as per its standard practices. (Doc. 42-4; Doc. 42-5; Doc. 42-6.) Plaintiff testified at her deposition that Guiffre and Leon "actually were really good as far as communicating with" her about the clearance card process. (Doc. 42-1 at 8.) Plaintiff has not shown that she was treated less favorably than Aguayo, who testified similarly that Primavera paid for her application and guided her through the application process. (Doc. 51-1 at 12-14, 17.) Both Plaintiff and Aguayo were allowed to continue working despite unresolved clearance card issues. (Doc. 42-1 at 9; Doc. 51-1 at 10, 14.)

. . . .

**2. Unauthorized Overtime**

Guiffre and Leon testified that overtime needed to be approved by Leon or, if Leon was unavailable, by Guiffre. (Doc. 47-2 at 10; Doc. 49-1 at 3-4.) Plaintiff identifies no evidence indicating that anyone except Leon and Guiffre was authorized to approve overtime. There is no genuine dispute that Plaintiff worked overtime without Leon and Guiffre's approval. (*See* Doc. 42 at 4 ¶¶ 18-21; Doc. 42-1 at 10-14; Doc. 48 at 3-5 ¶¶ 18-21, 34.)

Plaintiff alleges that overtime practices were inconsistently enforced (Doc. 48 at 3 ¶ 18), but the evidence she cites does not raise a genuine dispute on that issue. Plaintiff cites to deposition testimony concerning an incident during which she was reprimanded for working overtime without approval even though Aguayo had told her to stay over. (Doc. 42-1 at 11.) But there is no genuine dispute that Aguayo was not authorized to approve overtime. (Doc. 47-2 at 11.) Furthermore, there is no evidence that this particular incident affected the terms and conditions of Plaintiff's employment such that it could be deemed an adverse employment action for purposes of Plaintiff's discrimination claims. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024) (a plaintiff alleging employment discrimination "must show some harm respecting an identifiable term or condition of employment").

Plaintiff alleges that Morel was allowed to clock in early and clock out late without being reprimanded, but she identifies no evidence indicating that Morel worked overtime without authorization. Furthermore, Plaintiff testified that Morel was a Resource Specialist who worked the third shift in the office. (Doc. 42-1 at 23.) He did not work in the kitchen. (*Id.*) Guiffre testified that resident team members received most of the overtime opportunities, with kitchen team members only occasionally having overtime opportunities. (Doc. 47-2 at 8; *see also* Doc. 47-4 at 10 (testimony of Margarita Bauza that there was not a need for overtime in the kitchen).) Given that Morel worked in a different position with different overtime opportunities, and there is no evidence that he worked unauthorized overtime, Plaintiff has not shown that Morel is a similarly situated employee

who was treated more favorably.

**3. Schedule Change Request**

Plaintiff argues that even though other employees were permitted to maintain outside employment, Primavera denied her request for a schedule change accommodation and removed her from the schedule. (Doc. 47 at 10.) Plaintiff further argues that a reasonable jury could find that she was terminated from her position even though the termination was labeled a resignation. (*Id.*) The Court disagrees.

Based on the undisputed evidence, Plaintiff was no longer qualified for her position once she notified Primavera that she could work only one day per week, because the position required working full-time. There is no genuine dispute that Plaintiff's position at Primavera was a full-time position, that she obtained a better-paying job in June 2024, that she notified Primavera she could work only one day per week due to her acceptance of the other job, and that Primavera declined to accommodate Plaintiff's schedule change request because Primavera needed a full-time Kitchen Team Member. (Doc. 42-1 at 15-17; Doc. 42-9; Doc. 47-2 at 15-17.) Primavera's refusal to accommodate Plaintiff's schedule change request was not an adverse employment action but, rather, adherence to the requirements of Plaintiff's job. There is no evidence that Plaintiff would have been fired had she been willing to continue working full-time. Furthermore, the only reasonable inference from the undisputed evidence is that Plaintiff voluntarily resigned after Primavera refused to accommodate her schedule change request. (Doc. 42-1 at 36; Doc. 42-10.) No reasonable jury could find that Plaintiff was terminated.

Finally, there is no evidence that any similarly situated employee was treated more favorably than Plaintiff. Although Primavera allowed employees to maintain outside employment, there is no evidence that Primavera allowed any full-time employee to transition to a part-time schedule in order to accommodate that employee's outside employment. (*See, e.g.*, Doc. 51-1 at 30 (Aguayo had a second job but did not need Primavera to accommodate it).

Plaintiff cannot establish a prima facie case of discrimination based on Primavera's

failure to accommodate her schedule change request and the conclusion of her employment with Primavera.

**C. Wrongful Termination Claim**

In Count IV, Plaintiff alleges wrongful termination under A.R.S. § 23-1501A(c)(ii). (Doc. 1.) The Arizona Employment Protection Act creates a cause of action if an employer terminates an employee in retaliation for the employee's disclosure that "the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state[.]" A.R.S. § 23-1501(A)(3)(c)(ii).

Defendant argues that Plaintiff cannot establish a claim under A.R.S. § 23-1501(A)(3)(c)(ii), because there is no evidence from which a reasonable jury could find that Plaintiff was terminated. (Doc. 41 at 7.) Defendant further argues that, even if there were such evidence, Plaintiff cannot show she was terminated due to reporting unsanitary conditions. (Doc. 50 at 4-5.) Plaintiff argues that there is a triable issue as to whether she was terminated and that temporal proximity supports causation. (Doc. 47 at 10.)

As discussed above, Plaintiff held a full-time position with Primavera but, after taking a higher paying job, notified Primavera that she could work only one day per week. (Doc. 42-1 at 15-17; Doc. 42-9.) When Primavera declined to accommodate that schedule change, Plaintiff filled out a voluntary resignation form. (Doc. 42-1 at 36; Doc. 42-10.) Given this undisputed evidence, no reasonable jury could find that Plaintiff was terminated from her position. Furthermore, there is no evidence that Plaintiff's employment ended due to anything other than her acceptance of a second job and her resultant inability to work full-time.[3]

**D. Punitive Damages**

Because Defendant is entitled to summary judgment with respect to liability,

---

[3] Even if temporal proximity between Plaintiff's complaints about bed bugs and the conclusion of her employment could sufficiently establish causation for purposes of a prima facie claim, Defendant has presented evidence of a legitimate, non-retaliatory reason for the conclusion of Plaintiff's employment, and Plaintiff has not identified evidence from which a reasonable jury could determine that Defendant's stated reason was pretextual.

Plaintiff cannot obtain punitive damages. Even if there were material factual disputes affecting liability, Plaintiff has not identified evidence showing that Defendant acted "with malice or with reckless indifference" to Plaintiff's federally protected rights, 42 U.S.C. § 1981a(b)(1), or that Defendant's outrageous conduct demonstrates an "evil mind." *Swift Transportation Co. of Ariz. v. Carman*, 515 P.3d 685, 692 (Ariz. 2022).

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 41) is **granted**. Summary judgment is granted in Defendant's favor on Plaintiff's claims in the above-captioned matter. The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.

Dated this 31st day of August, 2026.

Honorable Rosemary Márquez
United States District Judge